UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

M.V., on behalf of herself and her minor child, J.V.,

|                       | |                      |
|-----------------------|-|----------------------|
| Plaintiffs,           | | Civ. No. 20-cv-      |
|                       | | COMPLAINT            |
| - against -           | |                      |

NEW YORK CITY DEPARTMENT OF EDUCATION
NEW YORK CITY BOARD OF EDUCATION, AND
CHANCELLOR RICHARD CARRANZA IN
HIS OFFICIAL CAPACITY,

                                        Defendants.

_____

PRELIMINARY STATEMENT

1. This is an action alleging that Defendants, the New York City Department of Education, the Chancellor of the New York City Schools, in his Official Capacity, and the Board of Education (collectively "Defendants"), violated Plaintiffs' rights under the Individuals with Disabilities Education Improvement Act ("IDEA"), 20 U.S.C. § 1400, *et seq*., and Section 504 of the Rehabilitation Act, 29 U.S.C. § 701 ("Section 504"), as well as New York State law.

JURISDICTION AND VENUE

2. This Court has jurisdiction over Plaintiffs' federal claims under the IDEA pursuant to 20 U.S.C. § 1415, 42 U.S.C. § 1988, and as an action raising a federal question under 28 U.S.C. § 1331.

3. Venue lies in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) as it is the judicial district in which Defendants are situated and/or reside.

PARTIES

4.  Plaintiff, M.V., is the mother and natural guardian of J.V., a fifteen-year-old young man who has been diagnosed with, inter alia, an Autism Spectrum Disorder ("Autism").[1]

5.  M.V. and J.V. reside in Staten Island, New York.

6.  J.V. is a student with a disability who is eligible for a Free Appropriate Public Education ("FAPE") under the IDEA.

7.  J.V. is a qualified individual with a disability who is eligible for a FAPE under Section 504 and is protected from discrimination based upon his disability.

8.  Upon information and belief, THE NEW YORK CITY DEPARTMENT OF EDUCATION ("Department" or "DOE") is a local educational agency ("LEA") as defined in the IDEA, and thus bears the responsibilities of an LEA under the IDEA and in the New York State Education Law.

9.  Upon information and belief, the DOE is charged with the responsibility of developing policies with respect to the administration and operation of the public schools in the City of New York, including programs and services for students with disabilities.  N.Y. Educ. Law § 2590-g (McKinney 1980).

10. Defendant, THE NEW YORK CITY BOARD OF EDUCATION ("the Board of Education" or "the Board"), was or continues to be the official body charged with the responsibility of developing policies with respect to the administration and operation of the public schools in the City of New York.

---

[1] Initials are used throughout this Complaint to preserve the confidentiality of sensitive medical, educational, and disability-related information under the IDEA and the Family Educational Rights and Privacy Act of 1974 ("FERPA").

11. Upon information and belief, Defendant, RICHARD CARRANZA ("the Chancellor"), is the Chancellor of the New York City School District and, as such, is entrusted with the specific powers and duties set forth in N.Y. Educ. Law § 2590-h.

12. All Defendants jointly and/or individually constitute the LEA under the IDEA and state law.

13. All Defendants jointly and/or individually are recipients of federal financial assistance.

14. When the "DOE" is referenced throughout, the term DOE refers individually to Defendants DOE, as well as collectively to Defendants.

<u>LEGAL FRAMEWORK</u>

15. The IDEA guarantees that all eligible children with disabilities, ages three through twenty-one, must be offered a FAPE.  20 U.S.C. § 1412(a)(1).

16. A FAPE must meet each student's "unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d) (1) (A)-(B).

17. A FAPE must "include an appropriate . . . secondary school education in the State involved" and be provided in conformity with an IEP.  *See* 20 U.S.C. §§ 1401(9), 1414(d)(2)(A); 8 N.Y.C.R.R. § 200.4(e)(1)(ii).

18. To be entitled to a FAPE, a child must have one or more of thirteen disabling conditions and, by reason of his/him disability, require "special education" and "related services." 34 C.F.R. § 300.8(a)(1).

19. J.V. has been classified by Defendants with Autism, which is one of the thirteen listed disabilities.  34 C.F.R. § 300.8(a)(1).

20. Defendants are responsible for providing a FAPE to all eligible children in New York City and for promulgating policies and procedures in accordance with the IDEA.

21. Every child with the designated disability classifications is entitled to an Individualized Education Program, or "IEP" and the LEA (here, Defendants) must provide an IEP which must is individually tailored to each student and is meant to serve as a blueprint for each child's special education services. 20 U.S.C. § 1414(d).

22. By the beginning of each school year, City Defendants must have an IEP in place that offers a FAPE to each eligible child. 20 U.S.C. § 1414(d)(2).

23. Before an IEP can be developed, a child must be evaluated in accordance with detailed procedures outlined in federal and state law.

24. A child is reevaluated in accordance with the same standards at least once every three years, or more frequently if a parent or school district believes it is necessary.

25. Among other things, an IEP must be developed by a properly constituted IEP team that includes particular members, including the parent and a district representative who is knowledgeable about the services and able to commit district resources. 20 U.S.C. § 1414(d)(1)(B).

26. The IEP team must meet at least annually, and more frequently, if necessary, to modify a child's services and/or to address "[a] lack of expected progress toward the annual goals and in the general education curriculum." 20 U.S.C. § 1414(d)(4)(A)(ii)(I).

27. The IDEA broadly defines the categories of services that must be offered, which include, but are not limited to, special education, related services, supplementary aids and services, transition services, assistive technology ("AT"), and positive behavioral supports and services (collectively "Special Education Services").

28. The IDEA prescribes, in detail, the process for developing IEPs and their contents.  20 U.S.C. § 1414(d)(1)(A), (d)(2); 34 C.F.R. §§ 300.320(a)(2)-(3); 300.324; N.Y. Educ. Law § 4401, *et seq.;* and 8 N.Y.C.R.R.§ 200.4(d)(2)(iii)

29. For example, an IEP must contain the results of a child's most recent evaluations, as well as an accurate and consistent description of his/him strengths and present levels of academic achievement and functional performance (called "Present Levels of Performance" or "PLPs").  20 U.S.C.  § 1414(d)(1)(A).

30. An IEP must contain "a statement of the special education and related services and supplementary aids and services, based on peer-reviewed research to the extent practicable, to be provided to the child, or on behalf of the child, and a statement of the program modification or supports for school personnel that will be provided for the child."  20 U.S.C. § 1414(d)(1)(A)(i)(IV).

31. Each IEP must also contain research-based instructional strategies unless they are not feasible, including  positive behavioral interventions and supports for children whose behavior impedes their learning and/or that of others. 34 C.F.R. §§ 300.320(a)(4), 300.324(a)(2)(i); 8 N.Y.C.R.R. §§ 200.4(d)(2)(v)(b), 200.4(d)(3)(i).

32. An IEP team must also consider whether a student would benefit from assistive technology ("AT.")  34 C.F.R. §§ 300.5, 300.6, 300.105, 300.324(a)(2)(v).

33. The Defendants are obligated to make decisions about IEPs, services and placements based on student's individual needs, and not policies, procedures or availability of resources.

34. One of the IDEA's most well-known due process rights is the right to request an impartial hearing "with respect to any matter relating to the identification, evaluation, or educational placement of [a] child" or the provision of FAPE to a child.  20 U.S.C. § 1415(b)(6)(A).

35. Thereafter, a parent "shall have an opportunity for an impartial due process hearing, which shall be conducted by the State Educational Agency ("SEA")] or by the Local Education Agency ("LEA") as determined by State law or by the [SEA]." 20 U.S.C. § 1415(f)(1)(A).

36. The IDEA sets forth detailed requirements for hearing procedures. 20 U.S.C. §1415(f); 34 C.F.R. §§ 300.511-516.

37. In New York City, City Defendants are responsible for ensuring that impartial hearings comport with the IDEA's requirements.

<u>FACTS</u>

38. The parties agree that J.V.'s classification under the IDEA is "Autism."

39. J.V. has significant delays in receptive and expressive communication, cognition and academics, behavior, social skills, functional skills, such as activities of daily living skills ("ADLs") and fine and gross motor skills. These deficits are pervasive throughout his daily living.

40. Over the years, J.V. has also been diagnosed with verbal dyspraxia, a tic disorder, and dystonia, a disorder characterized by uncontrollable movements, in addition to his autism.

41. J.V. takes medications to attempt to address some of his behaviors and body movements.

42. J.V. displays a variety of deficits and interfering behaviors. These deficits are pervasive and transcend the behavioral, communicative, social, and physical domains. J.V. has weaknesses in the areas of cognition, focus, attention, socialization, expressive and receptive language, activities of daily living, behavior, gross motor development, and fine motor development. He also displays low sensory registration.

43. J.V. engages in maladaptive behaviors, including motor stereotypies (i.e., tapping objects, flapping his hands) and vocal stereotypies (i.e., humming, laughing, and crying), with

excessive frequency.  For example, during the 2015-2016 school year, J.V. emitted vocal perseverations near constantly.

44. J.V. has a history of harming himself by scratching, pinching, and slapping himself.  J.V. has also exhibited increased aggression toward others – his teachers, service providers, and parent all report being pinched, scratched, bit, or hit by J.V in the past five years.  During the 2015-2016 school year, J.V. was banging his head against walls.  J.V. has a significant history of "dumping" out drawers, buckets, bottles, or anything near him.  Because of these dangerous behaviors, J.V. requires near constant supervision.

45. During the 2015-2016 school year, J.V. also began eloping with greater frequency, including running out of the classroom.

46. J.V. is a non-verbal student. With prompting and redirection, J.V. is able to respond "Hi" and "Bye" with a wave to his teacher and other staff members, appropriately play with toys, and work in groups with his peers.  Towards the end of the 2015-2016 school year, pursuant to an impartial hearing order, the DOE provided J.V. with an iPad to communicate.

47. At home and in the community, J.V. has very limited ADL, communication and social skills and has regressed in many areas.  He has limited play skills and needs assistance dressing, with hygiene and eating.  Although J.V. was previously fully toilet-trained, he had several incidents where he urinated or defecated on the bus or at school.  Sometimes, he simply drops his pants and urinates in the middle of the classroom or at home.

48. J.V. has been receiving various related services since he was approximately 16 months old through Early Intervention.

49. For many years, at least since the 2012-2013 school year, J.V.'s needs have mandated the following special education program:

    a. placement at a New York State ("NYS") approved nonpublic school ("NPS Program"), Eden II, with a 6:1:3 classroom ratio;

    b. 1:1 speech-language therapy ("SLT") 8x30 per week;

    c. 1:1 physical therapy ("PT") 2x30 per week;

    d. 1:1 occupational therapy ("OT") 3x30 per week

    e. Specialized transportation; and

    f. A 12-month/extended school year for all services.

50. For several years, J.V. received 1:1 SLT 3x30; 1:1 PT 2x30; and 1:1 OT 3x30, all on a per-week basis, through related service authorizations ("RSAs"), on an after-school basis.[2]

51. In fact, J.V. has had the same related services at the same levels on his IEPs since he has started school due to his severe deficits. For most years, however, the CSE has illegally removed some of his services, and thus M.V. has had to file an impartial hearing request every year.

52. Beginning on or about 2016, J.V. began receiving home-based 1:1 instruction using the principles of Applied Behavior Analysis ("ABA") (generally referred to as "ABA").

53. More recently, the CSE has recommended the 1:1 ABA on his IEPs but the DOE will not provide it and fund it without an impartial hearing order, thus requiring M.V. to file impartial hearing requests. Additionally, the CSE refuses to recommend any BCBA supervision and individual parent counseling and training, despite J.V.'s profound behaviors.

54. J.V. receives some ABA as part of his school day program at Eden II. Eden II is the only NPS Program located on Staten Island and one of the only schools that offers ABA. J.V. has been attending Eden II for over the past ten years. Eden II, however, does not offer any after-school

---

[2] In October, 2018, M.V. agreed to termination of his after-school PT and reduction of his after-school OT to 2x30, instead of 3x30, per week.

services, after-school ABA services, or at-home parent training.  In fact, Eden II hasn't offered M.V. any parent training for the past several years.

55. Eden II is not equipped to provide additional after-school ABA and is not able to provide more than 5x30 1:1 SLT in school.  Additionally, Eden II is not able to provide any in-school OT or home parent counseling and training to deal with J.V.'s behaviors.

56. While J.V. has made progress with ABA, he still exhibits significant delays, especially in the areas of functioning and communication.  J.V. has improved his ability to identify body parts, animals, household items, food, shapes, and signs.  Additionally, his ABA therapists work to improve his motor, oral and vocal imitation.  J.V. shows the desire to learn new skills and has made progress in his ADL skills, particularly with respect to hygiene, such as teeth-brushing and washing hands.

57. J.V.'s related service providers have made clear that he continues to require after-school ABA, SLT and OT to maintain the progress that he has made and to improve his areas of significant weakness.

**Impartial Hearing Case # 161385 and the 2016-2017 School Year**

58. On June 17, 2015, the DOE created an IEP for J.V. (the "June 2015 IEP") for the 2015-2016 school year.  The June 2015 IEP recommended placement in a NYS NPS Program with a 6:1:3 classroom ratio; SLT 8x30, 1:1 (3x30, 1:1 after-school); OT 3x30, 1:1 after-school; individual parent counseling and training one hour once per month; a 12-month school year program; and special education transportation.

59. At the June 2015 IEP meeting, M.V. was told that the DOE was re-deferring J.V.'s case to the Central Based Support Team ("CBST") because Eden II did not have the services in question, and that he would have to leave the school.

60. The DOE's representative told M.V. that if she wanted J.V. to continue to receive after-school services, then he could no longer attend Eden.  The DOE representative suggested that the Parent file an impartial hearing request.

61. The June 2015 IEP did not include ABA, even though J.V. requires ABA to make progress and meet his goals.  The June 2015 IEP did not consider or include assistive technology, even though J.V. is non-verbal.  Further, the DOE removed PT from the June 2015 IEP without any new evaluations, new data, or the input of J.V.'s physical therapist.

62. The Parent filed yet another due process complaint ("DPC") on September 4, 2015, which was subsequently amended on October 1, 2015 to incorporate the September 2015 IEP.  This hearing was designated as IH Case Number 157210.

63. During the course of IH Case Number 157210, the DOE issued a "Nickerson" letter to the Parent because it failed to provide a seat in a classroom for J.V.

64. The DOE conceded that it did not offer a FAPE for the 2015-2016 school year.

65. On March 24, 2016, IHO Ralph Gerstein, Esq., issued a Findings of Fact and Decision ("the 2016 Decision"), based on the parties' agreement, which required the DOE to provide, *inter alia*:

   a.  Placement at an NPS school – Eden II – for the 2015-2016 school year;

   b.  A twelve-month school year;

   c.  Individual Speech and Language Therapy 5x30 at Eden II;

   d.  Individual after-school Speech and Language Therapy 3x30;

   e.  Occupational Therapy ("OT"), three times per week for 30 minutes per session, on an after-school basis (twelve-month school year);

   f.  Physical Therapy ("PT"), two times per week for 30 minutes per session, on an after-school basis (twelve-month school year);

    g.   Transportation Paraprofessional and limited travel time in an air-conditioned mini school bus (twelve-month school year);

    h.   10 hours per week of home-based ABA SETSS services provided by a Board Certified Behavior Analyst (twelve-month school year); and

    i.   An enhanced rate of $115 per hour for the provision of ABA SETSS.

66. The 2016 Decision also provided a compensatory bank of ABA SETSS services and required the DOE to conduct an assistive technology ("AT") evaluation and then provide reasonable AT services or devices.

67. Following the 2016 Decision, J.V. started to receive ABA at home and, as noted previously, the DOE provided an iPad as a trial for J.V. to use to communicate.  After the trial, the iPad was removed.

68. No new or revised IEP was given to the parent before the start of the 2016-2017 school year on July 1, 2016.

69. M.V. filed a due process complaint alleging a denial of FAPE for the 2016-2017 school year.  Defendant DOE assigned this complaint Impartial Hearing ("IH") Case Number 161385.

70. On August 2, 2016, after the parent filed her DPC, the DOE sent parent's counsel a "June 28, 2016" IEP ("2016 IEP"), purportedly for the 2016-2017 school year.  The projected date of implementation was July 11, 2016.  The attendance date for this IEP is September 3, 2015.

71. The August 2016 IEP is identical to the 2015 IEP, except for the addition of an AT recommendation and AT goals.

72. No new evaluations were conducted or reviewed to prepare the 2016 IEP.  The CSE failed to obtain any provider progress reports.

73. The descriptions of his Present Levels of Performance and Individual Needs on the 2016 IEP are word-for-word identical (with the addition of AT) as his 2015 IEP.  The goals on J.V.'s

2016 IEP were exactly the same (with the addition of two AT goals) as his goals on the 2015 IEP.

74. The 2016 IEP, same as the 2015 IEP, deferred his case to the Center Based Support Team (CBST).  It did, however, recommend 1:1 OT 3x30 and 1:1 SLT 8x30 and included parent training and specialized transportation.  The recommendations with respect to the related services, parent training, and special transportation were not in dispute.

75. No ABA services, however, are included on this IEP, even though it was found to be a necessary component of FAPE for J.V. only three months earlier.

76. On January 27, 2017, the IHO issued a decision in the Parent's favor (the "2017 Decision"), finding that the DOE had denied J.V. a FAPE for the 2016-2017 school year.  On January 31, 2017, the IHO issued a corrected decision ("2017 corrected Decision") (collectively, the "2017 Decisions").

77. Among other things, the 2017 Decisions ordered the DOE to provide the following, in addition to J.V.'s in-school related services:

   a.  Placement at an NPS – Eden II;

   b.  1:1 after-school speech and language therapy ("SLT") 3x30 per week;

   c.  1:1 after-school occupational therapy ("OT") 3x30 per week;

   d.  12 hours per week of 1:1 home-based ABA SETSS;

   e.  1:1 after-school physical therapy ("PT") 2x30 per week;

   f.  1 hour per week of BCBA supervision; and

   g.  1 hour per month of Parent counseling and training ("PCAT").  (Collectively, the "2017 Relief").

78. The DOE did not appeal the 2017 Decisions.

79. The DOE, however, did not implement all elements of the 2017 Decisions.

**Case No. 172570 and the 2017-2018 School Year**

80. Pursuant to the 2017 Decisions, the CSE convened February 15, 2017 and added the services to J.V.'s IEP ("2017 IEP"), as ordered by the 2017 Decisions.  The 2017 IEP recommends the following:

    a.  6:1+3 special class at a NYS Approved NPS,

    b.  12x60 ABA SETSS per week,

    c.  1:1 OT 3x30 (after school) per week,

    d.  Individual parent counseling and training monthly for 60-minute sessions to be provided by a BCBA or his ABA SETSS provider,

    e.  1:1 PT 2x30 (after school) per week,

    f.  1:1 SLT 5x30 (in school) and 1:1 SLT 3x30 (after-school) per week,

    g.  special transportation including an air-conditioned mini bus with limited travel time and a transportation paraprofessional,

    h.  a full-time crisis paraprofessional,

    i.  a dynamic display speech generating device, and

    j.  a 12-month/extended school year for all services.

81. The 2017 IEP failed to include the weekly BCBA supervision, as ordered by the 2017 Decisions.

82. For the start of the 2017-2018 SY, July 1, 2017, J.V. received all of the services listed on the 2017 IEP, pursuant to the 2017 Decisions.  The DOE issued RSAs for the after-school speech and OT authorizing services through June 30, 2018.

83. The 2017 IEP had a projected date of annual review as February 16, 2018.  As of that date, however, M.V. had not received notice of a CSE meeting for a new 2017-2018 IEP.  The DOE would terminate funding of J.V.'s ABA SETSS and other services on or about February 16, 2018, without an order from the impartial hearing officer.

84. Thus, M.V. filed a DPC on February 16, 2018, with the New York City Impartial Hearing Office ("IHO Office"), alleging, *inter alia*, that the DOE failed to provide J.V. a Free Appropriate Public Education ("FAPE") under the IDEA for the 2017-2018 school year, as well as claims pursuant to Section 504, in order to maintain J.V.'s services.

85. Defendant DOE assigned the February, 2018 DPC a Case No. of 172570.

86. The allegations in the February, 2018 DPC are incorporated herein by reference.

87. On March 7, 2018, the IHO issued an interim order on pendency in favor of Plaintiff, directing the DOE to continue to provide J.V.'s services.

88. After the DOE declined to offer any witnesses or evidence, Plaintiff filed a motion for summary judgment to enforce the 2017 IEP.

89. On July 11, 2018, the IHO issued his decision in Case No. 172570 (the "2018 Decision") in favor of the Plaintiff.

90. The 2018 Decision ordered the DOE to continue to provide all of the services on the 2017 IEP. Specifically, the 2018 Decision ordered the DOE to provide the following:

   a. Placement at an NPS (non-public school) – Eden II;
   b.  Speech and Language Therapy five times per week for thirty minutes per individual session, at Eden II;
   c.  Speech and Language Therapy three times per week for thirty minutes per individual session, on an after-school basis;
   d.  Occupational Therapy three times per week for thirty minutes per individual session, on an after-school basis;
   e.  Physical Therapy two times per week for thirty minutes per individual session, on an after-school basis;

    f.   Transportation paraprofessional and limited travel time in an air-conditioned mini school bus;
    g.  Twelve hours per week of 1:1 home-based ABA SETSS services;
    h.  An enhanced rate of $125 per hour for the provision of ABA SETSS;
    i.  One hour per week of BCBA supervision of the student's SETSS;
    j.  Monthly individual parent training and counseling (1x60), to be provided by a BCBA or the student's SETSS provider;
    k.  A full-time 1:1 crisis paraprofessional;
    l.  Assistive technology, such as a dynamic display speech generating device (SGD), i.e., an iPad; and
    m.  A twelve-month school year for all services.

91. Additionally, the 2018 Decision ordered the DOE to provide compensatory banks of SLT and OT.

92. The Defendants failed to appeal the 2018 Decision.

93. The DOE, however, did not implement all elements of the interim order on pendency and the 2018 Decision in IH Case Number 172570.

**Case No. 174235 and the 2018-2019 School Year**

94. On June 29, 2018, the parent filed an impartial hearing request, alleging a denial of FAPE with respect to the 2018-2019 school year. The DPC was assigned IH Case Number 174235, and was assigned to the same IHO as IH Case Number 172570, as the written decision in IH Case Number 172570 had not yet been rendered.

95. On October 5, 2018, the CSE finally convened to create an IEP for the 2018-2019 school year. The 2018 IEP recommended the following program:

    a.  Placement in a 6:1+3 NPS;
    b.  12 hours per week of SETSS (separate location);
    c.  Individual Occupational Therapy ("OT") 2x30 per week (separate location);
    d.  Group parent training and counseling monthly for 60-minute sessions;
    e.  Individual Speech and Language Therapy ("SLT") 5x30 per week (separate location – school) and 3x30 per week (separate location)
    f.  A full-time 1:1 crisis paraprofessional;
    g.  A dynamic display speech generating device for use at school and home;
    h.  Specialized transportation, including a bus paraprofessional and limited travel time on an air-conditioned mini-bus; and

i.   A 12-month extended school year for all services.

96.   The DOE would not fund the ABA SETSS, unless these services were ordered by an impartial hearing officer.

97.   Moreover, the 2018 IEP terminated the provisions for weekly BCBA supervision and individual parent training and counseling to be provided by the ABA provider.

98.   Thus, the Plaintiff filed an amended DPC on December 13, 2018 in IH Case Number 174235, alleging, *inter alia*, that the DOE had denied J.V. a FAPE for the 2018-2019 school year because the Defendants would not actually fund the recommended ABA SETSS without a new impartial hearing order.

99.   The allegations in the December, 2018 DPC are incorporated herein by reference.

100.   After a pendency hearing held on July 26, 2018, the IHO issued an interim order on pendency in favor of Plaintiff, which continued the ABA SETSS, BCBA supervision, and after-school OT and SLT.

101.   Once again, the DOE did not present any witnesses or evidence at the impartial hearing in IH Case Number 174235.

102.   By order dated June 6, 2019, the IHO in Case No. 174235 found in favor of the Plaintiff that J.V. was denied a FAPE for the 2018-2019 SY and ordered the DOE to continue J.V.'s educational program that includes ABA SETSS, BCBA supervision, and after-school SLT and OT (the "2019 Decision").

103.   Defendants did not appeal the 2019 Decision.

104.   Defendants failed to implement services in the pendency order and final decision in IH Case No. 1742325.

**The 2019-2020 School Year / IH Case # 184606**

105.    The CSE failed to convene to create a new IEP for J.V. for the 2019-2020 SY before the start of the school year on July 1, 2019.  The prior IEP was the October, 2018 IEP, which was found to deny J.V. a FAPE, in IH Case Number 174235.

106. M.V. filed a new DPC on July 1, 2019 ("2019 DPC") alleging, *inter alia*, that the DOE did not provide a FAPE to J.V. for the 2019-2020 school year.

107. Defendant DOE assigned the 2019 DPC a Case Number of 184606.  The case is assigned to impartial hearing officer ("IHO") Mindy Wolman, Esq.

108. The allegations contained in the 2019 DPC are incorporated herein by reference.

109. On August 30, 2019, IHO Wolman issued an interim order on pendency, ordering the DOE to continue to fund all of the services.  Specifically, the pendency order requires the DOE to fund the following:

   a.   A 6:1+3 program at Eden II, an approved NYS nonpublic school;
   b.   Full-time 1:1 crisis paraprofessional;
   c.   1:1 SLT 5x30 per week in school;
   d.   1:1 SLT 3x30 per week after-school, through the issuance of an RSA;
   e.   1:1 OT 2x30 per week after-school, through the issuance of an RSA;
   f.   12 hours per week of 1:1 ABA SETSS at an enhanced rate;
   g.   One hour per week of BCBA supervision;
   h.   Monthly individual parent counseling and training for 60 minute sessions;
   i.   Dynamic display speech generating device, for use at school and home;
   j.   Special education transportation in an air-conditioned mini-bus with limited travel time not to exceed 60 minutes, with a transportation paraprofessional; and
   k.   A twelve month extended school year for all services.

110. On November 18, 2019, Plaintiff filed an amended DPC in light of the new 2019 IEP.

111. The Defendants failed to respond to the 2019 DPC and the 2019 amended DPC, as required by the IDEA.  20 U.S.C. § 1415(c)(2)(B)(i).

112. The Defendants failed to ensure that an impartial due process hearing was held and that a final decision was rendered within the timelines of the IDEA and its implementing regulations.  34 C.F.R. § 300.515.

113. The DOE has not implemented and funded the entirety of J.V.'s stay-put placement and the interim order on pendency in IH Case Number 184606.

114. Further the Defendants will be unable to implement J.V.'s pendency placement and the 2019 Decision due to shortages and systemic delays.

115. Plaintiff is entitled to compensatory education and additional equitable relief based on the Defendants' failure to implement the Decisions, FOFDs and interim orders on pendency throughout the years at issue.

**Defendants Repeatedly Terminate J.V.'s Services or Fail to Fund J.V.'s Services in Violation of the IDEA and Section 504**

116. Defendants predetermine every IEP for J.V. or refuse to fund services on J.V.'s IEPs, which causes his mother to have to remain in a constant state of litigation to maintain his program.

117. Defendants will not recommend or fund the services that constitute J.V.'s stay-put placement on IEPs – namely, ABA SETSS, BCBA supervision, after-school OT and SLT, and individual PCAT (collectively, "services at issue").

118. Defendants do not employ staff that are available to deliver the programs and services that constitute J.V.'s stay-put placement and in particular, the services at issue.

119. Defendants have not ensured that their menu of service options for children with autism includes the 1:1 instruction and ABA SETSS that are part of J.V.'s stay-put placement.

120. The only way for the Plaintiff to maintain J.V.'s stay-put placement, including 1:1 instruction using the principles of ABA, is to engage in litigation.

**Defendants have Subjected Plaintiffs to Systemic Practices**

121. The DOE is not permitted to recommend ABA and after-school special education services for children with autism.

122. Under Defendants' policies and practices, the following services cannot be recommended on J.V.'s IEP absent an order or settlement obtained via litigation:

1. 1.1 instruction using the principles of ABA;

2. 1:1 ABA SETSS;

3. ABA supervision;

4. After-school special education and/or related services; and

5. Individual parent counseling and training.

123. J.V. has been subject to these policies and practices for several years.

124. These policies and practices violate the IDEA and Section 504.

125. There is no remedy through the administrative process to address the systemic claims raised here, as IHOs do not have authority to order the Defendants to refrain from applying policies and practices to J.V.

126. Moreover, the DOE does not ensure that there is access to the least restrictive environment ("LRE") and community engagement for children with autism.

127. The law permits parents to receive funding for educational service providers who do not meet state credentials or approval as a remedy for a denial of a FAPE.

128. J.V. should be allowed to receive funding for 1:1 ABA SETSS to be delivered by providers who are "appropriately" proficient in the use of ABA, even if those individuals are not credentialed under New York law.

129. J.V. should be able to receive funding for alternative or substantially similar services as part of his stay-put placement.

**The RSA Process Was Insufficient to Implement the Orders**

130. Defendants have adopted procedures pursuant to which they issue vouchers called "Related Service Authorizations" (or "RSAs") when the DOE is unable to locate a service provider.

131. The DOE will issue RSAs to parents who have received orders for funding for related services in impartial hearing orders.

132. Defendants have failed to ensure that there are sufficient providers for after-school related services, especially in Staten Island.  The RSAs are rendered useless because parents, including Plaintiff, are unable to locate providers who accept the RSAs.

133. In addition, Defendants' rates and payment procedures, including timeliness of payments, are insufficient to ensure access to related service providers in Staten Island, where those services are needed.

134. Plaintiff is the prevailing party in each of the three underlying due process hearings (IH Case Numbers 161385, 172570, and 174235) and is entitled to an award of attorneys' fees for work performed in connection with these cases and this action.[3]

135. The fees and costs charged by Plaintiff's current and former counsel are consistent with market rates for the legal services performed, in light of counsels' experience and expertise and the complexity of the issues.

---

[3] IH Case # 184606 is still pending in the impartial hearing process.  If Plaintiff prevails in IH Case # 184606, she would be entitled to her attorneys' fees for work in that case as well.

## CAUSES OF ACTION

FIRST CAUSE OF ACTION
SECTION 504 OF THE REHABILITATION ACT

136.  Plaintiff repeats and re-allege the allegations of all the above paragraphs as if fully set forth herein.

137.  Defendants' conduct is knowing, intentional, reckless, and gross.

138.  J.V. is a qualified individual with a disability entitled to protection under Section 504.

139.  Defendants discriminated against J.V. under Section 504 by, *inter alia*, denying him reasonable accommodations, adopting systemic policies, procedures and practices that violate J.V.'s rights under the IDEA and New York State law, and engaging in widespread and pervasive violations of the IDEA and New York State Education law.

140.  Defendants discriminated against J.V. under Section 504 by, *inter alia*, committing extensive, repeated, gross, knowing and reckless violations of multiple provisions of the IDEA and New York State law.  Defendants also discriminated against J.V. under Section 504 by repeatedly failing to implement pendency and final orders and repeatedly failing to offer J.V. a FAPE for the school years alleged herein.

SECOND CAUSE OF ACTION
THE IDEA

141.  Plaintiffs repeat and re-allege the allegations of all the above paragraphs as if fully set forth herein.

142.  Defendants did not offer J.V. a FAPE for the school years alleged herein.

143.  Plaintiff has exhausted the administrative procedures for each of the school years alleged herein, as required by the IDEA.

144. Except for the current school year which is currently being litigated, IHOs have found that the Defendants failed to provide J.V. a FAPE for each of the school years at issue in this complaint.

145. Defendants' application of blanket policies and practices repeatedly deny J.V. a FAPE and violates the IDEA.

146. Defendants have repeatedly failed to implement J.V.'s stay-put rights under the IDEA.

147. Defendants have failed to implement fully the final decisions of the IHOs for the school years at issue.

148. Defendants have repeatedly failed to comply with the IDEA's procedural requirements, including its mandate to provide Plaintiff due process responses to her DPCs and to hold proper resolution meetings.  Even when Defendants have provided due process responses to the DPCs, they are often form responses that do not fully comply with the IDEA's notice requirements.

149. Defendants engaged in systemic predetermination by refusing to individualize IEPs for J.V and to offer services that should be available under the IDEA.

150. Defendants denied M.V. her due process rights under the IDEA.

THIRD CAUSE OF ACTION
42 U.S.C. § 1983

151. Plaintiffs repeat and re-allege the allegations of all the above paragraphs as if fully set forth herein.

152. Defendants have violated 42 U.S.C. §1983 by depriving Plaintiffs, under color of state law, of their rights, privileges, and immunities under federal statutory and constitutional law.

153. By implementing, promulgating, and continuing to enforce and/or effectuate policies, practices, and customs as alleged herein, Defendants have denied J.V. the educational services to which he is entitled under the IDEA and New York law, in violation of 42 U.S.C. § 1983.

154. By failing to supervise and train their employees and agents concerning the federal and state laws and policies concerning general and special education services, Defendants have violated 42 U.S.C. § 1983.

155. By failing to ensure that the pendency orders, decisions, and FOFDs were implemented, Defendants violated 42 U.S.C. §1983.

156. The Defendants violated Plaintiff's rights under 42 U.S.C. § 1983 by failing to have adequate policies, procedures, protocols, and training to ensure that the provisions of the IDEA and Section 504 referenced herein were complied with, which deprived J.V. of his right to a free and appropriate education under federal and state law.

157. Under color of state law, the Defendants deprived J.V. of his right to educational services afforded to him under New York State law, in violation of the Fourteenth Amendment of the U.S. Constitution.

158. As a direct and proximate result of the Defendants' misconduct, J.V. has suffered and will continue to suffer harm, unless Defendants are enjoined from their unlawful conduct.

<u>CONCLUSION</u>

WHEREFORE, Plaintiff respectfully requests that the Court:

   i.   Assume jurisdiction over this action;

  ii.   Issue a declaratory judgment that Defendants have violated Plaintiffs' rights as alleged herein.

iii.    Issue a TRO and preliminary injunction directing Defendants to immediately implement J.V.'s stay-put rights by, *inter alia,* timely funding the providers who were delivering services to J.V. as of July 1, 2019.

iv.    Issue a preliminary and permanent injunction directing Defendants (a) to implement the decisions; (b) order compensatory education and additional equitable relief for the violations alleged herein; (c) place funds in escrow sufficient to ensure that there are staff available to implement any services ordered; (d) authorize the funding and/or delivery of ABA services by individuals who are proficient in the delivery of ABA even if those individuals do not possess NYS ABA Credentials; and (d) award additional equitable relief to remedy the failure to implement the decisions and J.V.'s stay-put services.

v.    Award Plaintiff reasonable attorneys' fees and costs in accordance with her status as the prevailing party in the hearings, and the work implementing the decisions;

vi.    Award Plaintiff reasonable attorneys' fees and costs incurred in connection with this action; and

vii.    Award such other, and further, relief as to the Court may seem just and proper.

Dated:       January 27, 2020
               New York, New York

Respectfully submitted,
THE LAW OFFICE OF ELISA HYMAN, P.C.

*/s/ Elisa Hyman*

By_____
Elisa Hyman, Esq.
The Law Office of Elisa Hyman, P.C.
1115 Broadway, 12th Floor
New York, NY 10010
Phone: (646) 572-9064
Fax: (646) 572-9055
elisahyman@gmail.com